IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DOROTHY B., | ) | No. 18 CV 50017 |
| | ) | |
| Plaintiff, | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND OPINION ORDER

Plaintiff Dorothy B. brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying her social security benefits. For the reasons below, the Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

## I. BACKGROUND

Plaintiff filed an application for disability benefits on June 6, 2014. R. 18, 174. Plaintiff alleged a May 22, 2014 disability onset date caused by low back pain, numbing in her left hip and toes, depression, bilateral wrist pain, and right elbow pain. R. 174, 214. Plaintiff stopped working because of her impairments on the May 22, 2014 onset date. R. 214. However, she reported resuming work part-time as an assistant cook[1] after her onset date from approximately November 18, 2014 through July 3, 2015. R. 53, 265.

On August 7, 2015, Plaintiff, represented by counsel,[2] appeared for a hearing before an Administrative Law Judge ("ALJ"). R. 40–66. Plaintiff was 52 years old at the time of the

---

[1] At the hearing, the VE categorized this job as "food assembler," DOT 319.484-010. R. 67.
[2] Plaintiff's counsel in this appeal represented Plaintiff at the hearing before the ALJ. Dkt. 41.

hearing. She testified about her work history and various impairments, including her learning disability and leg, lower back, and hip pain. Most relevant to this appeal, Plaintiff testified about sensation issues and swelling in her wrists and hands. R. 58, 62. Plaintiff alleged these issues lead to pain and caused her to drop objects intermittently. R. 62.

After the hearing, the ALJ followed the five-step evaluation process set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and found that the Plaintiff was not disabled. R. 19–20, 31. The ALJ specifically found the following: (1) At Step One, that Plaintiff had not engaged in substantial gainful activity since her onset date of May 22, 2014. R. 20; (2) at Step Two, that Plaintiff had "the following severe impairments: L4-5 disc herniation involving L5 nerve root impingement, early left carpal tunnel syndrome, and learning disorder." R. 21; (3) at Step Three, that Plaintiff did not have an impairment or combination thereof that met or equaled any listed impairment. R. 22; (4) the Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except that she could "occasionally stoop, crouch, crawl, kneel, balance and climb ramps and stairs," R. 24, could not "climb ladders, ropes, or scaffolds," and could not "have exposure to excessive vibrations, unprotected heights, heavy equipment or operating machinery," R. 24–25, and could "frequently reach, handle and finger with the non-dominant left upper extremity," *id*; (5) at Step Four, the ALJ found Plaintiff could not perform any relevant past work, R. 29; (6) at Step Five, relying on the vocational expert ("VE") and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could work as a laundry sorter, and that this job existed in significant numbers in the national economy, R. 30.

# III. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The Commissioner's denial of disability is conclusive when supported by substantial evidence. *Id.*; *Skinner v. Astrue*, 487 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399–400 (1971). The court may not displace the ALJ's judgment by reconsidering facts and evidence, reweighing evidence, or by making independent credibility determinations. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Similarly, even if reasonable minds could differ on whether a claimant is disabled, a reviewing court must affirm the ALJ's decision if it is adequately supported. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

However, review of an ALJ's decision is not a rubber stamp of approval. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) ("mere scintilla" not substantial evidence). The court must critically review the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The ALJ's conclusion will not be affirmed where he fails to build a logical bridge between the evidence and his conclusion, even if evidence exists in the record to support that conclusion. *Berger v. Astrue*, 516 F. 3d 539, 544 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (where opinion is "so poorly articulated as to prevent meaningful review" the case must be remanded). Additionally, courts may not build a logical bridge for the ALJ. *Mason v. Colvin*, 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19–20 (N.D. Ill. Oct. 29, 2014).

## IV. ANALYSIS

1. Step Two Determination

First, Plaintiff argues that the ALJ failed to identify the severity of her right wrist limitations at Step Two. Dkt. 9 at 5. At Step Two, the ALJ found early *left* carpal tunnel syndrome as a severe impairment, but did not note any severe impairment as to the right wrist. R.21. In support, she relies on her subjective complaints of wrist pain and medical records of impairments such as carpal tunnel syndrome. However, any error at Step Two is harmless if the ALJ finds a claimant has *any* severe impairment and goes on to sufficiently address the aggregate effect of all the claimant's severe and non-severe impairments later in his analysis. *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015); *Arnette v. Astrue*, 676 F3d 586, 591 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010); *see also* 20 C.F.R. § 404.1523. In this case, the ALJ found Plaintiff had some severe impairments at Step Two. R. 21. Therefore, the ALJ's Step Two error here is harmless if he adequately discussed the upper-right extremity impairments in the remainder of his analysis. As discussed below, the ALJ adequately accounted for the evidence of Plaintiff's alleged pain and limited movement in her right wrist. Accordingly, Plaintiff has identified no error at Step Two of the ALJ's analysis that would require remand.

2. RFC Determination

Next, Plaintiff argues that the ALJ erred when he determined her RFC by failing to fully account for evidence of pain and limited movement in her right wrist and by failing to justify his weighing of the opinion evidence. Dkt. 9 at 6–11.

*a. ALJ's Discussion of Medical Evidence of Plaintiff's Right Wrist*

4

Plaintiff argues the ALJ ignored evidence of functional limitations in her right wrist. She points out that a 2014 EMG showed early signs of entrapment or carpal tunnel syndrome especially in the left wrist (implying similar albeit less severe signs in the right), and Dr. Coe later agreed with that sentiment and believed Plaintiff's carpal tunnel symptoms had resolved because Plaintiff had stopped working. R. 620, 695, 699–700. Another treater, Dr. Retzer, stated Plaintiff had hand numbness ("parasthesias") after an exam in October 2014 and once more in May 2016. R. 409, 750. Dr. Retzer also found positive Tinel's and Phalen's signs[3] in Plaintiff's upper extremities during her October 2014 exam. R. 409.

Plaintiff has not shown that the ALJ failed to account for evidence of a right wrist impairment. In his summary of the medical record, the ALJ recognized that in May 2014, Plaintiff displayed some pain in her wrists, but she had full motion bilaterally. R. 25, 306. In June 2014, Plaintiff displayed a positive Phalen's test and pain with repetitive motion in the wrists, but no swelling. R. 26, 340. The ALJ mentioned neurosurgeon Dr. Macias' June 2014 and September 2014 exam findings that Plaintiff had left carpal tunnel syndrome, but otherwise had upper and lower extremity strength at 5/-5 with preserved sensation and deep tendon reflexes. R. 23, 738.[4] He mentioned that the 2014 EMG showed early carpal tunnel syndrome in the *left* wrist with possible median neuropathy. R. 26, 620.[5] He recognized Dr. Retzer's October 2014 hand

---

[3] A Tinel's sign is defined as "a sensation of tingling . . . felt at the lesion site or more distally along the course a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve." STEDMAN'S MEDICAL DICTIONARY 1772 (28th ed. 2006). A Phalen's sign is defined as the "appearance of numbness or paresthesias within 30 to 60 seconds during the Phalen test, a positive sign for carpal tunnel syndrome." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1714 (32d ed. 2012).
[4] Although the ALJ discussed this point in his Listings analysis at Step 2, the Court reads the ALJ's opinion as a whole. *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004)
[5] As Plaintiff points out, the EMG report specifically states that she displayed signs of early carpal tunnel syndrome "especially of the left hand" suggesting similar albeit less severe signs in the right. R. 620. The Court notes that Dr. Macias stated the 2014 EMG showed early left carpal

exam which, though indicated positive Tinel and Phalen's signs bilaterally, found that Plaintiff had "intact sensation, no edema, no swelling, and no tenderness" in her upper extremities. R. 26, 409. He also mentioned that a March 2015 functional capacity assessment demonstrated Plaintiff's ability to frequently carry twenty pounds and constantly carry ten. F. 26, 594-95. He discussed Dr. Ramchandani's 2015 consultative exam, which showed Plaintiff "had normal right-handed grip strength, normal strength in all extremities, intact reflexes" and normal gait. R. 27, 434. He then recognized that Dr. Retzer's May 2016 exam showed negative Tinel and Phalen's signs with no intrinsic weakness or non-use atrophy. R. 27, 750.

The ALJ went on to adequately address the record evidence of Plaintiff's upper-right extremity issues, including Plaintiff's subjective complaints of pain. First, the ALJ relied on Dr. Gleason's 2016 medical opinion which, after review, found no evidence of limitations in the upper-right extremity. Dr. Gleason concluded, and the ALJ relied on the conclusion, that "[Plaintiff] had good grip strength bilaterally, full extension of her digits, she made a good fist, and she had normal deep tendon reflexes in her upper extremities. [She] displayed diminished sensation over her right upper extremity, but negative impingement, cross over, Spurling, Adson,[6] and Tinel's tests" and that Plaintiff "had normal strength, and no tenderness in her upper extremities," and imaging revealed normal shoulders and wrists. R. 28, 706.

Second, the ALJ adequately addressed Plaintiff's subjective complaints of wrist pain. An ALJ must "consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce pain." *Moore v. Colvin*,

---

tunnel syndrome and made no mention of the right wrist. R. 738. Additionally, the ALJ identified other positive signs of carpal tunnel syndrome in Plaintiff's right wrist in his opinion.
[6] Spurling tests identify radicular or nerve root pain, and Adson's tests identify signs of thoracic outlet syndrome. STEDMAN'S MEDICAL DICTIONARY 1949, 1961 (28th ed. 2006).

6

743 F.3d 1118, 1125 (7th Cir. 2014); 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1529(a). In so doing, the ALJ is required to discuss the most important pieces of evidence and need not address all of Plaintiff's individual statements. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *Rice*, 384 F.3d at 371.

Here, the ALJ recognized Plaintiff alleged disability partly due to wrist pain and difficulty using her hands, which caused her to drop objects on occasion and made it difficult for her to lift objects. R. 25, 214, 226. In his summary of the medical record, the ALJ also noted Plaintiff's subjective complaints of wrist issues to her various treaters, including complaints of pain to an APN in 2014 (R. 305), complaints of right wrist pain to her family physician Dr. Retzer in October 2014 (R. 409) and of hand numbness later in May 2016 (R. 749); complaints of numbness and burning in her hands to Dr. Coe in December 2014 (R. 694); and complaints of hand pain to Dr. Gleason in January 2016 (R. 702). R. 25, 27, 28. He later found these subjective complaints "partially consistent" with the evidence. He reasoned that "[a]lthough [Plaintiff] displayed tenderness and occasionally diminished sensation, she had largely normal strength, motion, gait, and station" and concluded that the "exams generally documented good grip strength, which contradicts the claimant's allegations of dropping objects regularly due to poor grip." R. 29. This analysis is supported by the record evidence which, despite the few positive carpal tunnel signs identified in the medical record, documented normal grip strength.

Finally, the Court disagrees with Plaintiff's argument that *Heldenbrand v. Chater*, No. 96-3971, 1997 U.S. App. LEXIS 35559 (7th Cir. Dec. 15, 1997) dictates remand. Dkt. 9 at 7. There, a left-handed claimant "was missing the first joint of his forefinger on the left hand" and "the little finger on the left hand had been amputated and reattached." *Id*. at *29. The claimant had a learning disability and was not represented by an attorney at the hearing before the ALJ.

7

*Id*. at *3–4. The Seventh Circuit identified the conflicting medical evidence provided to the ALJ regarding the nature and severity of claimant's left-hand impairments, noting that some evidence indicated functional limitations and other evidence indicated normal function. *Id*. at *30–32. Instead of resolving the conflicts in the evidence, the ALJ "simply chose to guess whether the left hand was impaired" and did not discuss the evidence regarding the left hand in his opinion, which in part lead the Seventh Circuit to remand the case. *Id.* at *32.

However here, unlike in *Heldenbrand*, the ALJ sufficiently addressed the evidence regarding Plaintiff's upper-right extremity as discussed above. He did not "simply guess" Plaintiff had no impairment in her upper-right extremity then fail to discuss relevant evidence throughout the remainder of his opinion. Instead, he discussed the objective and subjective medical evidence regarding her upper-right extremity, including the positive carpal tunnel signs, the record experts' opinions, and the objective tests supporting or contradicting those opinions when formulating the RFC. Therefore, the Court finds the ALJ did not err at Plaintiff's RFC determination.

  *b. Opinion Evidence*

Plaintiff next argues the ALJ did not adequately support his decision to give more weight to Dr. Gleason's medical opinion than Dr. Coe's. Dkt. 9 at 8. An ALJ must consider the factors in 20 C.F.R. § 404.1527(c) when giving weight to medical opinions. In this case, Dr. Coe and Dr. Gleason are non-treating sources, thus neither opinion is entitled to controlling weight. *Id*; *Murphy v. Astrue*, No. 11 CV 831, 2011 U.S. Dist. LEXIS 102518, at *30 (N.D. Ill. Sept. 12, 2011). Instead, the ALJ was required to weigh the opinions in light of the factors in 20 C.F.R. § 404.1527(c), including supportability, consistency, and the doctor's specialization. For the following reasons, the Court finds the ALJ properly weighed these opinions.

The ALJ ultimately gave Dr. Gleason's opinion that Plaintiff was not functionally limited "substantial weight" because: (1) he was an orthopedic surgeon with expertise in the conditions claimant reported; (2) his report was more detailed; (3) his report tracked other substantial evidence in the record, including the medical observations of neurosurgeons Dr. Macias and Dr. Asner and the functional capacity evaluation of a physical therapist; and (4) his report was more consistent with Plaintiff's light work after onset. R. 28–29.

Conversely, the ALJ gave "limited weight" to Dr. Coe's opinion that Plaintiff should be limited to sedentary work because: (1) his report was inconsistent with Plaintiff performing light work after her alleged onset; (2) Plaintiff "displayed negative straight leg raising, and normal strength, flexion and extension" which was inconsistent with his ultimate finding that Plaintiff is limited to sedentary work; and (3) Dr. Coe's examination did not document the reflex and sacroiliac tenderness that Dr. Coe said were present. R. 27–28.

Plaintiff first argues that the light work Plaintiff performed after alleged onset was only part time, and therefore the ALJ erred when he acknowledged that fact only at Step One, but not in his RFC determination. Dkt. 9 at 10. This argument is meritless. The ALJ is entitled to consider Plaintiff's part-time work after her alleged onset date. *Berger*, 516 F. 3d at 545; *Long v. Berryhill*, 16 CV 50060, 2017 U.S. Dist. LEXIS 61118, at *16 (N.D. Ill. Apr. 21, 2017). Additionally, the Court reads the ALJ's decision as a whole. The ALJ need not repeat analyses that are relevant to multiple parts of his decision. *Rice*, 384 F.3d at 370 n. 5.

At Step One, the ALJ recognized Plaintiff's seven months of work as a food assembler (DOT 319.484-010) after alleged onset as part-time. R. 21, 67. He noted Plaintiff's testimony that she worked for approximately 16 to 24 hours per week; that the work required occasional stooping, and frequent reaching, bending, and fingering; and that Plaintiff was required to stand

for 8 hours at a time. R. 20–21. He also reasoned that Plaintiff's earnings from this work were within 87–89% of the presumptive substantial gainful activity threshold. *Id*. Finally, the ALJ stated that he would "not construe this work activity as substantial or gainful, but [would] take it into account [at] a later sequential evaluation step in considering the claimant's maximum [RFC]." R. 21. Thus, the ALJ recognized this work as part-time and signaled that he would consider it in developing his RFC. The ALJ was entitled to consider this part-time work when weighing the opinion evidence. *Berger*, 516 F.3d at 545. That Plaintiff performed part-time light work after onset conflicts with Dr. Coe's opinion that Plaintiff was limited to sedentary work, and the ALJ did not otherwise mischaracterize the nature of the work performed. Thus, the ALJ did not err when he used this reason to justify giving Dr. Coe's opinion less weight.

      Plaintiff next argues the ALJ did not describe how Dr. Gleason's opinion tracked other "substantial evidence" in the record or why Plaintiff's negative straight leg tests, normal strength, and normal flexion and extension justify rejecting Dr. Coe's opinion. Dkt. 9 at 10–11. However, the ALJ gave some examples of the evidence Dr. Gleason's opinion tracked and pointed out that Dr. Coe's similar negative exam results in these areas contradicted his own opinion that Plaintiff should be functionally limited to sedentary work. He reasoned that the medical observations of neurologists Dr. Macias and Dr. Asner were consistent with Dr. Gleason's. R. 28. The record supports this contention. As the ALJ described, Dr. Macias observed in June 2014 that Plaintiff had full movement, sensation, and strength in the arms and legs. R. 23, 633. The ALJ noted Dr. Asner similarly observed in December 2014 that Plaintiff had negative straight leg raise testing. R. 23, 642. Dr. Asner's report also noted Plaintiff had full sensation in her lower extremity and was able to walk on her heels and toes. R. 642. These observations are consistent with Dr. Gleason's observations that Plaintiff could stand on her toes

10

and heels bilaterally and had largely intact sensation in the lower extremities. R. 705. Additionally, the ALJ reasoned that Dr. Coe's own negative exam findings contradicted his opinion that Plaintiff be limited to sedentary work. R. 27. The record also supports this contention. Dr. Coe's exam documented normal straight leg testing, strength, and flexion and extension. R. 698–98. These negative exam signs tracked the findings of the medical experts previously mentioned and contradict Dr. Coe's opinion that Plaintiff should be limited to sedentary work.

Relatedly, ALJ stated that Dr. Gleason's opinion was consistent with a functional capacity evaluation conducted by a physical therapist in March 2015. R. 26, 28, 594–96. This observation is also supported by the record. The March 2015 functional capacity evaluation tests showed that Plaintiff had ability in all functional capacity areas, including normal sitting, standing and walking, bending and reaching, the ability to frequently lift and carry twenty pounds and constantly carry ten. R. 594–95. These observations are consistent with Dr. Gleason's exams that showed a negative straight leg test, normal shoulders, full bilateral extension, intact sensation, normal gait, and normal strength in the upper and lower extremities. R. 703–705.

Finally, Plaintiff argues that the ALJ erred because he did not explain how Dr. Gleason's opinion was more detailed than Dr. Coe's, despite the opinions containing a similar level of detail. Dkt. 9 at 8–10. However, even if the Court agreed that this was an improper reason for the ALJ to justify his weighing of the medical opinions, such error would be harmless because the ALJ gave enough other valid reasons to justify the weight he gave to Dr. Gleason's opinion. The ALJ noted Dr. Gleason is an orthopedic surgeon with expertise in Plaintiff's orthopedic conditions and Dr. Coe's report did not document the reflex and sacroiliac tenderness he asserted

11

were present.[7] As discussed above, the ALJ properly reasoned Plaintiff's part-time work after alleged onset was more consistent with Dr. Gleason's opinion that Plaintiff could work. Plaintiff's negative straight leg raise tests, normal strength, flexion, and extension were consistent with Dr. Gleason's exam results. Those normal test results were consistent with those found by the two neurosurgeons identified by the ALJ. The March 2015 light functional capacity evaluation pointed out by the ALJ is consistent with Dr. Gleason's findings and opinion. Because the ALJ gave enough valid reasons to justify his weight determination, he did not err when he gave more weight to Dr. Gleason's opinion over Dr. Coe's.

3. Step Five Determination

Plaintiff argues the ALJ erred at Step Five because (1) he only found one job Plaintiff could perform, and (2) even if one job were enough, he did not determine if this job existed in substantial numbers in the regional economy, thus it is ambiguous. Dkt. 9 at 11–12. At Step Five, the ALJ bears the burden to show that the claimant can perform a job that exists in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cit. 2004). "[W]ork exists in the national economy when there is a significant number of jobs (in ***one or more*** occupations) having requirements which [the claimant is] able to meet with [their] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b) (emphasis added). A job exists in the national economy when it "exists in significant numbers either in the region [the claimant] lives or in several other regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a); *see Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014). This provision is meant to prevent the Social Security Administration from denying benefits based on "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the applicant

---

[7] Plaintiff does not challenge these justifications.

12

lives." *Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004). But if a claimant can perform jobs found in significant numbers in either the local, regional or national economy, "the claimant loses." *Browning*, 766 F.3d at 708.

In this case, the ALJ relied on the VE's testimony that a person with Plaintiff's RFC could perform the job of laundry sorter (DOT 361.687-014), and that the job existed in significant numbers, 17,700 jobs, in the national economy. R. 30. The ALJ did not ask the VE about regional numbers, and Plaintiff did not object to this testimony at the hearing. R. 30, 73–77.

Plaintiff's first argument, that the ALJ is required to prove there are multiple jobs the claimant can perform, is unsupported. Work exists in the national economy when a significant number of jobs in one or more occupations that the claimant is qualified to perform. 20 C.F.R. § 404.1566(b). Thus, one occupation is sufficient as long as it exists in sufficient numbers regionally or in several regions of the country. *See Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008) (VE testimony errors harmless where ALJ properly found claimant could perform one job that existed in the national economy). The ALJ did not err in finding one occupation Plaintiff could perform, but only if that occupation exists in the national economy as defined by the regulations.[8]

Plaintiff's second argument, that the ALJ cannot solely rely on the national number of jobs available without reference to regional numbers, is also unsupported. As the Commissioner points out, and Plaintiff concedes (R. 9 at 13), "if there is a significant number of jobs that the applicant for benefits can perform anywhere in the United States he is not deemed disabled"

---

[8] The Court notes that although finding a claimant can perform one job nationally is sufficient, an ALJ's decision is more compelling when it finds multiple jobs a claimant can perform given a claimant's RFC.

regardless of local and state numbers. *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) (citing *Browning*, 766 F.3d at 708). Additionally, the Court notes that Plaintiff did not dispute the nature of the VE's testimony at the administrative hearing, and the ALJ is entitled to rely on even conclusory VE testimony if left unchallenged at the hearing. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (the claimant "forfeited her argument regarding the vocational expert's testimony about the number of positions for each of the six jobs by failing to object during the hearing"); *Barrett*, 355 F.3d at 1067; *see also James A.B. v. Comm'r of Soc. Sec.*, 18 CV 0814 CJP, 2019 U.S. Dist. LEXIS 5650, at *14–15 (S.D. Ill. Jan. 11, 2019). Regardless, Plaintiff maintains that "even if the [VE] did not *have* to cite to local or regional numbers, the absence of the local and regional numbers arguably makes the ALJ's decision less supported." Dkt. 9 at 13–14 (emphasis in original).

In support, Plaintiff cites *Morgan v. Colvin*, 14 CV 01341, 2015 U.S. Dist. LEXIS 116830 (S.D. Ind. Sept. 2, 2015). There, the court stated that "national numbers would be relevant only if the ALJ concluded that the number of jobs in the local region or state was insignificant and needed to turn to data from other regions." *Id.* at *9. However, the *Morgan* court never stated that national numbers without local numbers are insufficient. The court instead recognized that the ALJ could turn to national numbers if local or regional numbers were insignificant. The primary issue in *Morgan* was that both the regional *and* national numbers the ALJ relied on were ambiguous.

Indeed, in *Morgan*, the VE testified that the claimant could perform broad categories of jobs in the national economy. 2015 U.S. Dist. LEXIS 116830, at *4–6. The court found that this testimony was ambiguous because the VE never determined how many jobs existed for each job title, but instead testified that the claimant could perform some jobs, but not others, within a

broader category of job titles regionally and nationally. *Id*. at *4–5, 10. The court noted that the numbers indicated by the VE were "for a broad selection of jobs, many of which the VE admitted [plaintiff was] not qualified to perform" before remanding the case. *Id.* at *10–11. The court ultimately concluded that "[i]t is unclear how the ALJ concluded that there was a significant number of jobs when he had no idea how many of the jobs identified by the VE existed in [the claimant's region], or in any other region of the country." *Id.* at *10. The ultimate issue was that all the job numbers the ALJ identified were ambiguous, not that the ALJ could not properly rely on a national number of jobs.

In Plaintiff's case, the ALJ determined a person with Plaintiff's RFC could perform one specific job in the national economy, not a broader representative category of jobs. Thus, the national number relied upon by the ALJ here is not ambiguous as it was in *Morgan*.

Plaintiff also cites *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014), for the proposition that without regional numbers, the Court cannot tell if there are enough regional numbers to be considered significant and therefore the use of a solely national number is ambiguous. Dkt. 9 at 12–13. This argument fails for two reasons. First, it ignores *Alaura*, which explicitly states that a significant number of national jobs is sufficient, regardless of state or local ones. 797 F.3d at 507 (citing *Browning*, 766 F.3d at 708). Second, *Gutierrez* does not stand for such a proposition. Instead, the court there stated that a national number of jobs would suffice to constitute significant work "in several regions of the country" if the number was significant enough, regardless of whether the VE correctly identified any regional job numbers. *Gutierrez*, 740 F.3d at 528. Ultimately, the court agreed that the 25,000 national jobs identified by the VE was significant. *Id.* at 529. Because an ALJ's finding that Plaintiff can perform one job in

15

significant numbers in the national economy is sufficient, and because that national number is not ambiguous in this case, using that national number is sufficient as long as it is significant.

Therefore, the only remaining question is whether 17,700 jobs is a significant number of national jobs. The Court and parties are unaware of a decision in which the Seventh Circuit determined what constitutes a "significant" national job number. Other Circuits have determined what number of national jobs is "significant" and provide some guidance. The Ninth Circuit has found 25,000 national jobs was significant and suggested as few as 10,000 would be significant. *Gutierrez*, 740 F.3d at 528–29. The Sixth Circuit has indicated 6,000 national jobs is "comfortably within" the realm of a significant number of jobs. *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016). Plaintiff notes that the Ninth Circuit has held 1,680 national jobs was deemed not significant. Dkt. 9 at 14; *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). However, the above cases suggest a job number in the tens of thousands is significant, and Plaintiff provides no other authority to suggest 17,700 national jobs is insignificant.[9] Therefore, the Court finds that the 17,700 jobs found by the VE is a significant number of jobs in the national economy.

---

[9] Plaintiff cites *Villano v. Astrue*, 556 F.3d 558, 564 (7th Cir. 2009) arguing that where the number of jobs available to the claimant are ambiguous, the case should be remanded to the ALJ, even where the numbers seem significant. Dkt. 9 at 14. However, in *Villano*, the number of jobs relied upon by the ALJ was ambiguous: the VE testified that 1,549 jobs were available, but the ALJ erroneously stated in his opinion that 15,400 jobs were available. *Id*. Here in contrast, the ALJ did not incorrectly overstate the number of jobs identified by the VE. Instead, the ALJ accurately relied upon the number given by the VE, 17,700, thus the number ambiguity in *Villano* is not present here. Additionally, the *Villano* court did not cite that individual error as cause for remand but found the error not harmless in light of the many other issues in the ALJ's opinion. *Villano*, 556 F.3d at 564.

## IV. CONCLUSION

For the above reasons, the Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Entered: May 31, 2019

_____
Magistrate Judge Iain D. Johnston